1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

DOUGLAS E. GALLAGHER,

Case No. C16-5088 RBL-TLF

Plaintiff,

11

v.

REPORT AND
RECOMMENDATION

12

DEPARTMENT OF CORRECTIONS,

**Noted for: December 28, 2018**

13

Defendants.

14

15

Before the Court is plaintiff Douglas Gallagher's motion for partial summary judgment

16

on the issue of defendants' violation of his Eighth Amendment rights, Dkt. 95, and plaintiff's

17

motion to exclude defendants' expert witnesses, Dkt. 84. Plaintiff sued the State of Washington,

18

the Washington State Department of Corrections (DOC), and several DOC employees under 42

19

U.S.C. § 1983 for violating his right to adequate medical care. Second Amended Complaint, Dkt.

20

13. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W.*

21

*v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). For the

22

reasons set forth below, the undersigned concludes that genuine disputes of material fact remain

23

that preclude the Court from rejecting defendants' qualified immunity defense at this stage.

24

Accordingly, the undersigned recommends that the Court deny Mr. Gallagher's motion for

25

REPORT AND RECOMMENDATION - 1

1    partial summary judgment. In addition, the undersigned grants in part and denies in part Mr.

2    Gallagher's motion to exclude expert witnesses.

3                                              **FACTS**

4    A.    Background: Hernias and DOC Policy

5          Mr. Gallagher's suit relates to the defendants' treatment of his umbilical hernia. He also

6    suffered from an inguinal hernia during part of the period at issue. An umbilical hernia occurs

7    when part of the small intestine or fat passes through the abdominal wall near the navel. Fetroe

8    Decl., Dkt. 45, ¶ 9. An inguinal hernia occurs when part of an internal organ or fat bulges

9    through a weak area of muscle that forms the wall of the abdomen at the groin. *Id.*, ¶ 10.

10          A reducible hernia is one that can be flattened by applying pressure or repositioning the

11    body. Declaration of Dale Fetroe, M.D., Dkt. 45, ¶ 6. When a hernia is not reducible, it is

12    incarcerated and has a risk of becoming strangulated. *Id.*, ¶¶ 6, 7. Reducible hernias are typically

13    not life threatening. *Id.*, ¶ 6. Some reducible hernias can be clinically monitored, and surgical

14    repair is not always required. *Id.* Under such circumstances, monitoring or "watchful waiting"

15    can be medically appropriate. *Id.*; Declaration of Counsel (Feulner Decl.), Dkt. 119-11, p. 6

16    (deposition of James Flowers, M.D.).

17          When health care providers outside of prisons evaluate whether to refer a patient for

18    surgical repair of a hernia, they consider the size of the hernia, any evidence of incarceration, the

19    level of pain caused by the hernia, the impact of the hernia on the patient's daily activities, and

20    any additional conditions that may impact the decision to refer a patient to surgery, as well as the

21    patient's resources. *Id.*, ¶ 6. "Watchful waiting" can be a medically acceptable approach in

22    treating both umbilical and inguinal hernias. *Id.*; Feulner Decl., Dkt. 119-11, p. 6.

23          In DOC facilities, the Offender Health Plan (OHP) defines which mental and physical

24    health care is medically necessary—and therefore available—for inmates. Declaration of Jesse

25    REPORT AND RECOMMENDATION - 2

Froehling, Dkt. 97-6, p. 2 (deposition of Edith Kroha, ARNP); Froehling Decl., Dkt. 97-11, p. 3. The OHP directs the DOC Chief Medical Officer to "promulgate and maintain a directory of health care services which fall into Levels 1, 2 and 3." Froehling Decl., Dkt. 97-11, p. 6. Level 1 care is "medically necessary;" level 3 is not; and level 2 may be under certain circumstances. *Id.*, p. 7. Either the Care Review Committee (CRC), the Facility Medical Director, or the Chief Medical Officer are responsible for determining whether a proposed service for a Level 2 service should be resolved to Level 1 or Level 3. *Id.* DOC providers may deviate from the listed levels if "other documented data clearly makes the assigned level medically inappropriate." *Id.*, p. 6.

At the time Mr. Gallagher was requesting surgery, the OHP considered surgical repair (herniorrhaphy) to be medically necessary if the prisoner had "intractable pain despite discontinuation of all non-ADL activities, OR [the hernia was] incarcerated OR rapid growth of hernia defect opening." Froehling Decl., Dkt. 97-10, p. 3; Fetroe Decl., Dkt. 45, ¶ 7 (incarcerated or strangulated hernias considered Level 1). The CRC approves surgical repair of reducible hernias if it determines that such repair meets the criteria for medical necessity. To do so, the CRC examines factors similar to those considered by non-DOC health care providers: the size of the hernia, any evidence of incarceration, the presence of intractable pain (measured by the patient's description and activities), the impact of the hernia on daily living, and co-existing medical conditions. Fetroe Decl., Dkt. 45, ¶¶ 6, 7. The Chief Medical Officer—in this case, defendant G. Steven Hammond, M.D.—can override a CRC decision "if, in his/her opinion, the CRC determination is not consistent with the OHP or if execution of the plan would present a significant safety risk." Froehling Decl., Dkt. 97-11, p. 9 (OHP); *see* Froehling Decl., Dkt. 97-5, pp. 2-3 (deposition of G. Steven Hammond, M.D.).

REPORT AND RECOMMENDATION - 3

B.    <u>Treatment for Mr. Gallagher's Hernias</u>

A physician's assistant diagnosed Mr. Gallagher with an umbilical hernia in October 2009. Declaration of Douglas E. Gallagher, Dkt. 41, ¶ 2 & Exhibit 1. A month later, the physician's assistant noted that the hernia was "2x2 hard" and "reduces easily." *Id.*, Exhibit 2. After a visit in April 2010, Edward Hopfner, M.D., referred Gallagher's umbilical hernia, which was still "[s]mall" and "mildly symptomatic," to another doctor to consider presenting it to the CRC. *Id.*, Exhibit 4. He noted that while the hernia did "not present any urgency," it also was "not going to go away and with time it stands a good chance of getting larger," at which point surgery would present a greater risk. *Id.*, Exhibit 4. At subsequent visits, providers observed the hernia getting larger. *Id.*, Exhibits 5, 6.

In August 2011, Mr. Gallagher filed an initial grievance, indicating the pain caused by his hernia was affecting his activities of daily living (ADL) and he had not received proper medical treatment. Gallagher Decl., Dkt. 41, ¶ 8. The grievance was denied at the appeals level in May 2012, because surgical repair was not considered medically necessary. *Id.* At several visits from 2012 to 2014, Mr. Gallagher informed medical providers that he was in pain daily, his hernia was growing larger, and his hernia was preventing him from performing daily tasks. *Id.*, ¶¶ 9, 11, 12, 17, 18 & Exhibits 7, 11, 13, 15. In the medical reports documenting these visits, the provider either did not note or noted minimal expressions of pain by Mr. Gallagher. *See id.*, ¶¶ 9, 10, 11, 12, 13, 15 & Exhibits 7, 10, 11, 13, 15; Declaration of Edith Kroha, Dkt. 46, ¶ 6 & Exhibit 1.

The CRC again denied Mr. Gallagher surgical repair for his hernia after defendant ARNP Edith Kroha presented his request in November 2014. Gallagher Decl., Dkt. 41, ¶ 18 & Exhibit 16; Kroha Decl., Dkt. 46, ¶ 8. Dr. Hammond was one of the CRC members who voted on Mr. Gallagher's request at that meeting. Declaration of G. Steven Hammond, Dkt. 120, ¶ 6; Feulner Decl., Dkt. 119-5, p. 7.

REPORT AND RECOMMENDATION - 4

1      In June 2015, Mr. Gallagher developed an inguinal hernia and informed medical

2  providers it was growing quickly and causing him daily pain. Gallagher Decl., Dkt. 41, ¶ 20 &

3  Exhibit 17. Mr. Gallagher's medical providers, including defendants Dr. Fetroe and Nurse

4  Kroha, found that both hernias were still reducible. *Id.* Mr. Gallagher states that when he

5  reiterated that that he was in constant pain, Dr. Fetroe suggested he pay for the surgery himself

6  and stated, "We will not do anything until we have to." *Id.* Nurse Kroha wrote in her visit notes

7  that "Mr. Gallagher did not yet meet the criteria per DOC policy for consultation and repair of

8  his hernia" and advised him "to return if he experienced increased pain, vomiting, or inability to

9  reduce his hernia." Fetroe Decl., Dkt. 45, ¶ 11. She wrote that although Mr. Gallagher reported

10  frequent pain, he had not been buying any pain medication at the commissary. Gallagher Decl.,

11  Dkt. 41, Exhibit 18. However, Mr. Gallagher had been bartering with other inmates for pain

12  medicine. Gallagher Decl., Dkt. 41, ¶ 20 & Exhibit 19 (declarations of Maua Muasau and Brad

13  A. Grubham).

14      Over the next three months, Mr. Gallagher submitted over 20 kites to Dr. Fetroe and

15  Nurse Kroha seeking treatment for his hernias. Gallagher Decl., Dkt. 41, ¶ 23. They responded

16  either that it was a "sick call issue" or he could pay for medical care himself. *Id.* In September

17  2015, Mr. Gallagher filed two grievances after CRC denied his renewed requests for surgery. *Id.*,

18  ¶¶ 25, 26 & Exhibits 23, 24, 25, 26. Dr. Fetroe denied Mr. Gallagher's grievances, restating that

19  surgical repair was not medically necessary, and defendant Dr. Hammond and Kevin

20  Bovenkamp affirmed the decision on appeal in January 2016. *Id.*, ¶¶ 25, 33, 35 & Exhibits 33,

21  34. Throughout 2016, Mr. Gallagher repeatedly sought medical attention and told providers that

22  his hernias prevented him from completing his job requirements, participating in offender

23

24

25  REPORT AND RECOMMENDATION - 5

support programs, and from physical exercise, which he stated in turn caused weight gain and hypertension. *Id.*, ¶¶ 38, 39, 41, 42, Exhibits 37-40.

On February 6, 2017, PA-C Peterson suspected Mr. Gallagher's inguinal hernia had become incarcerated when she was unable to reduce it. She sent him to the hospital. Gallagher Decl., Dkt. 41, ¶¶ 48-49 & Exhibits 44, 45. After Dr. Sandra Tatro confirmed the hernia was incarcerated, PA-C Peterson authorized her to surgically repair the inguinal hernia but not the umbilical hernia. *Id.*, ¶¶ 52, 53.

Mr. Gallagher received surgery to repair his umbilical hernia in May 2018. Feulner Decl., Dkt. 119-6, p. 26. Mr. Gallagher asserts that before this, his umbilical hernia caused him constant pain and that pain medication prescribed by CBCC healthcare providers was ineffective. *See id.*, pp. 21, 23; Dkt. 119-5, pp. 29-30. Besides suffering from daily pain, Mr. Gallagher states his physical, mental, and emotional health deteriorated and his medical condition negatively affected his relationship with his wife. Gallagher Decl., Dkt. 41, ¶¶ 69, 70 ; Dkt. 119-5, pp. 29-30; *see* Froehling Decl., Dkt. 97-3, pp. 9-10 (Gallagher deposition).

## EVIDENTIARY ISSUES

As a preliminary matter, both parties contend that the Court should reject certain evidence in ruling on plaintiff's motion for partial summary judgment.

A.    Plaintiff's Motion to Exclude Expert Witnesses

Both parties disclosed expert witnesses in anticipation of a jury trial. Dkt. 80, 81. Plaintiff filed a motion to exclude the five defense experts. Dkt. 84. Defendants responded, and plaintiff replied. Dkt. 116, 117. At oral argument, counsel for Mr. Gallagher confirmed that the motion to exclude is brought under Fed. R. Civ. P. 56(c)(4) and Local Civil Rule (LCR) 7(g) as to the evidence that defendants may rely on in responding to plaintiff's motion for partial summary judgment. *See* Dkt. 95; Dkt. 118.

REPORT AND RECOMMENDATION - 6

1    In preparing for trial, Mr. Gallagher disclosed the identity and a written report for one

2 retained expert medical witness, who will offer opinion testimony on the inadequacy of the

3 treatment Mr. Gallagher received for his hernia. *See* Dkt. 80. Defendants disclosed the identities

4 of five expert witnesses who will testify "about the care DOC provided to Mr. Gallagher during

5 his incarceration, as detailed in Mr. Gallagher's medical records." Dkt. 81. The defense experts

6 may also opine on the "treatment provided Mr. Gallagher for his umbilical hernia and complaints

7 of pain have been medically appropriate and consistent with the Offender Health Plan." *Id.*

8    Defendants submitted summary reports for these witnesses under Fed. R. Civ. P.

9 26(a)(2)(C), but they did not submit more detailed written reports under Rule 26(a)(2)(B). Mr.

10 Gallagher filed this motion to exclude testimony from all five defense expert witnesses for

11 failing to comply with the Rule 26 written report requirement.

12    As discussed below, the undersigned grants the motion to exclude expert testimony from

13 one witness (William Aurich, M.D.) and denies the motion to exclude—for purposes of summary

14 judgment—the expert opinions of the other four experts, who were each treatment providers.

15 Ultimately, the Honorable Ronald B. Leighton will issue rulings during trial on any objections to

16 the admissibility of evidence regarding specific questions asked of, or testimony offered by,

17 those defense experts.

18    Federal Rule of Evidence 702 allows admission of expert testimony from a witness "who

19 is qualified as an expert by knowledge, skill, experience, training, or education," when it is both

20 helpful to the trier of fact and reliable. Rule 702 should be administered with the "liberal thrust"

21 of the Federal Rules and their "general approach of relaxing the traditional barriers to 'opinion

22 testimony.'" *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993). Under Rule 703,

23 an expert may form an opinion based on facts or data in the case that the expert has been made

24

25 REPORT AND RECOMMENDATION - 7

aware of or learned through first-hand knowledge. In a civil case, an opinion pertaining to an ultimate issue of a case is generally not "automatically objectionable." Fed. R. Evid. 704.

Defendants identified five expert witnesses to provide expert testimony, all of whom are medical providers currently or formerly employed in their professional capacity at the DOC. Four of the expert witnesses, Dale Fetroe, M.D., Jackie Peterson, PA-C, Clifford Johnson, M.D., and Edith Kroha, ARNP, directly treated Mr. Gallagher's umbilical hernia between 2009 and the present. The fifth expert witness, Dr. Aurich, is the Facility Medical Director (FMD) of the CBCC, where Mr. Gallagher is currently incarcerated, and "is responsible for clinical oversight of the care and treatment provided at that facility." Dkt. 81.

Under Fed. R. Civ. P 26(a)(2), the Court separates expert witnesses into two categories for purposes of determining whether certain disclosures are necessary: (1) experts who are specially retained or employed to provide expert opinion in a trial or whose duties as employees of a party regularly involve giving testimony, and (2) experts who are neither retained nor employed for litigation purposes but are permitted to give expert testimony under Federal Evidence Rules 702, 703, or 705 and are called as fact witnesses. Experts in the first category are required to submit a comprehensive written report in accordance with the adjudicated discovery deadlines. *See Goodman v. Staples the Superstore*, *LLC*, 644 F.3d at 827 (9th Cir. 2011). This report must contain

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness' qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness either testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony of the case.

Fed. R. Civ. P. 26(a)(2)(B)(i-vi).

REPORT AND RECOMMENDATION - 8

1    Experts in the second category are generally not required to submit a detailed written

2    report. Rather, the party offering the expert testimony must submit a summary disclosure that

3    includes: (i) the subject matter on which the expert is expected to present evidence under Federal

4    Rules of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the

5    expert is expected to testify. Fed. R. Civ. P. 26(a)(2)(C).

6    The summary disclosure requirement under Rule 26(a)(2)(C) is designed to avoid undue

7    written disclosure reports from expert witnesses who are not "specially retained" and do not fall

8    under Rule 26(a)(2)(B)'s written report requirement. *See* Fed. R. Civ. P. 26 Advisory Comm.

9    Notes (2010). The Advisory Committee emphasized the detailed written report required under

10   Fed. R. Civ. P. 26(a)(2)(B) only applies to expert witnesses specially retained for litigation,

11   while a non-retained expert witness could testify as a fact witness and offer an opinion under

12   Federal Rules of Evidence 702, 703, or 705, subject to Rule 26(a)(2)(C). *Id.* Thus, parties may

13   follow the summary disclosure requirement of Rule 26(a)(2)(C) when the proposed expert

14   witness is a treating physician, healthcare provider, or employee of a party, and the expert's

15   testimony is based on their expertise, yet the proposed expert is not specially retained or

16   employed solely for the purpose of providing expert testimony in a litigation. *Id.*

17   The Ninth Circuit addressed when a treating physician would be required to submit a

18   Rule 26(a)(2)(B) report in *Goodman v. Staples the Superstore, LLC*. 644 F.3d 817, 827 (9th Cir.

19   2011). Plaintiff brought a negligence complaint against defendant after sustaining serious injuries

20   from tripping and falling in the defendant's store. *Id.* Plaintiff disclosed two treating physicians

21   who would testify about the causation of her injury, without submitting written reports. *Id.* at

22   822. After learning that the two treating physicians had formed opinions on the plaintiff's

23   injuries based, in part, on unidentified medical records supplied by the plaintiff's attorney, the

24

25   REPORT AND RECOMMENDATION - 9

district court excluded the experts from testifying. *Id.* at 826. On appeal, the court affirmed the district court's reasoning, holding that "a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment." *Id.* at 826.

The *Goodman* court recognized that the Ninth Circuit had not previously specified when a treating physician is required to submit a Rule 26 written report. 644 F.3d at 824. Lower courts in the Ninth Circuit have treated the permissible scope of a treating physician's opinion testimony to include causation, examination, diagnosis, and treatment of a patient. *See Piper v. Harnischfeger*, 170 F.R.D. 173 (D. Nev. 1997) (explaining, "[o]pinions such as these are part of the ordinary care of the patient and do not subject the treating physician to the extensive reporting requirements of Fed. R. Civ. P. 26(a)(2)(B)"). However, the *Goodman* court simply held a Rule 26 written report is only required "when a treating physician morphs into a witness hired to render expert opinions that go beyond the usual scope of a treating doctor's testimony" *Id.* at 819-20. In other words, the District Court was not compelled to limit the scope of a treating physician's testimony to facts learned and opinions formed in the course of rendering treatment. *Id.* at 826.

When a party fails to abide by the disclosure requirements set out by Rule 26(a)(2), it is prohibited from introducing the witness' testimony at trial unless it establishes the failure to comply was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1); *see also Goodman*, 644 F.3d at 826 (citing *Yeti by Molly Ltd. V. Deckers Outdoor Corp.,* 259 F.3d 1101, 1106 (9th Cir. 2001)). Rule 37(a)(4) dictates that an "evasive or incomplete disclosure, answer, or response to a discovery obligation must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). Rule 37 "gives teeth" to the mandatory disclosure requirements set out in Rule

REPORT AND RECOMMENDATION - 10

1   26 by revoking the opportunity to use any information at trial that has not been properly

2   disclosed. *Ollier v. Sweetwater Union High Sch. Dist.*, F.3d 843, 861 (9th Cir. 2014); *Yeti by*

3   *Molly Ltd.*, 259 F.3d at 1106 (citing Fed. R. Civ. P. 37(c)(1)). Rule 37(c)(1) is a "self-executing,

4   automatic sanction" designed to provide a strong incentive to comply with Rule 26 disclosure

5   requirements. *Goodman*, 644 F.3d at 827 (*quoting* Fed. R. Civ. P. 37 Advisory Committee's

6   notes (1993)).

7           Here, the Court will deny plaintiff's motion to exclude the expert testimony of Dr. Fetroe,

8   PA-C Peterson, Dr. Johnson, and ARNP Kroha, because all four witnesses were properly

9   disclosed under 26(a)(2)(C)'s summary report requirement. Dkt. 81. Plaintiff concedes that these

10  experts are "treating physicians" for purposes of Rule 26. *See* Dkt. 84, ¶ 3. Evidence about the

11  care Mr. Gallagher received for his umbilical hernia, including opinions that the "treatment

12  provided to Mr. Gallagher for his umbilical hernia and complaints of pain has been medically

13  appropriate and consistent with the Offender Health Plan," does not exceed the scope of a

14  treating physician's testimony under Rule 26.

15          As clarified in *Goodman*, so long as a treating physician's opinion was formed during the

16  course of treatment, a written report is not required. Facts from the record establish that each of

17  the four experts at issue considered OHP guidelines when directing or administering Mr.

18  Gallagher's medical care. First, Dr. Johnson referred to OHP standards when determining that

19  Mr. Gallagher's hernia was not eligible for surgical repair. Gallagher Decl., Dkt. 41, Exhibit 5

20  (in explaining the criteria for surgical repair under the OHP, Dr. Johnson stated the criteria are

21  "intractable pain as well as difficulty or impossibility of reducing the hernia"). ARNP Kroha also

22  considered the OHP guidelines when assessing Mr. Gallagher's hernia and determining it did not

23  require surgical repair. Gallagher Decl., Dkt. 41, ¶¶ 12, 15 & Exhibit 11; Kroha Decl., Dkt 46, ¶

24

25  REPORT AND RECOMMENDATION - 11

6 & Exhibit 1. Additionally, Dr. Fetroe considered OHP criteria when he determined that the proper course of treatment for Mr. Gallagher's umbilical hernia was "watchful waiting." Gallagher Decl., Dkt. 41, ¶ 20; Fetroe Decl., Dkt. 45, ¶ 11. Finally, the record indicates PA-C Peterson based her decision to send Mr. Gallagher to the hospital on OHP criteria for surgical repair when she believed his inguinal hernia had become incarcerated. Gallagher Decl., Dkt. 41, ¶¶ 48-49 & Exhibits 44, 45. The record confirms the four experts relied on OHP criteria—namely, whether the hernia was reducible—in determining the course of treatment for Mr. Gallagher's umbilical hernia.

Furthermore, although the defense experts' opinions about the "appropriateness" of Mr. Gallagher's care under OHP guidelines may reach the ultimate issue of whether Mr. Gallagher's Eighth Amendment rights were violated, the plaintiff is challenging the individual choices of the defendants in treating his hernia, not the OHP policy itself. *See* R&R, Dkt. 64, p. 37 (noting that under theory of policy-based liability, plaintiff presented no evidence that OHP policy on its own was a violation of his constitutional rights). The four defense experts formed their opinions on whether the care Mr. Gallagher received was consistent and medically appropriate under the OHP during the course of treatment and not in anticipation of litigation. Therefore, defense experts Fetroe, Johnson, Kroha, and Peterson are not required to submit written reports and their testimony was properly disclosed under the summary report requirement of Rule 26.

As defendants agree, and like the expert physicians' testimony in *Goodman*, Dr. Aurich's expert evidence should be excluded. *See* Dkt. 116 at 6 ("As Plaintiff points out, Dr. Aurich was not a treating provider. In order to attempt to resolve this issue, Defendants will agree that Dr. Aurich will not be called to testify at trial."); 644 F.3d at 819. Accordingly, plaintiff's motion to exclude is granted with respect to Dr. Aurich only.

REPORT AND RECOMMENDATION - 12

B.    Objections in Summary Judgment Briefs

In addition to plaintiff's motion to exclude, both parties object to evidence the opposing party submitted with its summary judgment briefing.

Evidentiary affidavits filed in connection with motions for summary judgment must be made "on personal knowledge," with "[s]worn or certified copies" of any supporting documents attached. Fed. R. Civ. P. 56 (c)(4). Where a party attempts to introduce an exhibit by attaching it to a declaration or affidavit, the declarant or affiant must have personal knowledge of the exhibit. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 777 (9th Cir. 2002). "Supporting affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein." Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

Hearsay statements in affidavits are inadmissible. *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 875 n. 1 (9th Cir. 2002). Hearsay is any out-of-court statement, whether oral or written, offered in evidence to prove the truth of the matter asserted. FRE 801(a), (c). In the absence of a procedural rule or statute, hearsay is inadmissible unless it is defined as non-hearsay under FRE 801(d) or falls within a hearsay exception under FRE 803, 804, or 807. When a statement is hearsay within hearsay, or double hearsay, each statement must qualify under some exemption or exception to the hearsay rule. FRE 805; *United States v. Arteaga*, 117 F.3d 388, 396 n. 12 (9th Cir. 1997).

When a party's arguments at summary judgment relies on inadmissible evidence, the Court may strike such evidence. Fed. R. Civ. P. 56(c)(2); LCR 7(g).

REPORT AND RECOMMENDATION - 13

1    Here, defendants ask that the Court strike two items of evidence. First, they ask that the

2    Court strike portions of Mr. Gallagher's declaration that purport to quote Dr. Johnson, who is not

3    a defendant: "Dr. Johnson determined that the hernia did not meet the criteria for surgical repair

4    under the OHP, but he encouraged Mr. Gallagher to return if the hernia worsened. In his

5    recommendation, he mentioned that the 'criteria are intractable pain as well as difficulty or

6    impossibility of reducing hernia.'" Dkt. 95, p. 9 (quoting Gallagher Decl., Dkt. 41, Exhibit 5);

7    *see* Gallagher Decl., ¶ 6.

8    However, Mr. Gallagher does not appear to rely on any statements by Dr. Johnson that

9    are not in the visit note signed by Dr. Johnson that Mr. Gallagher attached to his declaration.

10   Gallagher Decl., Dkt. 41, Exhibit 5. To the extent that Mr. Gallagher quotes verbal statements by

11   Dr. Johnson, such statements are hearsay and the Court will not consider them. But defendants

12   do not challenge the Court's consideration of medical treatment notes, including those written by

13   Dr. Johnson.

14   Second, defendants ask the Court to strike testimony by Benjamin Maxwell, a corrections

15   officer, describing how the DOC generally treats prisoners with hernias. *See* Dkt. 95, p. 6;

16   Froehling Decl., Dkt. 97-9. Mr. Gallagher's motion for partial summary judgment quotes Mr.

17   Maxwell's statement that

18       Clallam Bay doesn't want to fix hernias. . . . It's – for the cost-efficiency. So to
         me, there was another guy – I don't know what his name was – but he had a
19       hernia. Same type of thing, they would not fix it. It seems like if you've got ten
         guys with hernias and they say no to all these ten guys and you end up having one
20       or two that push it, they'll fix them. But it seems like they think they're saving
         money because they didn't fix the other eight.
21
22   Dkt. 95, p. 6 (quoting Froehling Decl., Dkt. 97-9).

23   Defendants are correct that plaintiff did not establish a foundation for Mr. Maxwell to

24   offer an opinion on the reasons behind the DOC's medical treatment policies. *See* Fed. R. Evid.

25   REPORT AND RECOMMENDATION - 14

701, 702. Nor did plaintiff establish that Mr. Maxwell has personal knowledge of the factual assertions in this testimony. *See* Fed. R. Evid. 602. Defendants' motion to strike this testimony is granted.

In his reply brief, Mr. Gallagher objects to defendants' reliance on two items of evidence in responding to the motion for partial summary judgment. Defendants did not file a surreply to respond to this argument.

First, Mr. Gallagher points to several exhibits attached to the declaration of defense counsel, consisting of entries about hernias from an online medical resource—"UptoDate"—and an additional article on hernia treatment measures. *See* Dkt. 119, Feulner Decl., p. 2 & Exhibits 4, 5, 6. Mr. Gallagher is correct that defense counsel did not properly authenticate this evidence under Fed. R. Evid. 901. Nor do these documents appear to fall under any hearsay exception despite being offered for the truth of their contents. Fed. R. Evid. 802, 803. Accordingly, these documents will not be considered in the Court's summary judgment decision.

Second, Mr. Gallagher objects to opinions offered by treating providers Nurse Kroha and Dr. Fetroe, and by Dr. Hammond. These are addressed above with respect to plaintiff's motion to exclude experts.

**STANDARD OF REVIEW**

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence—such as affidavits or deposition excerpts—but may simply point out

1  the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato*
2  *Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

3      "If the moving party shows the absence of a genuine issue of material fact, the non-
4  moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine
5  issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex*
6  *Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). The non-moving party may not rely upon mere
7  allegations or denials in the pleadings but must set forth specific facts showing that there exists a
8  genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

9                                    **DISCUSSION**
10 A.    Defendants Entitled to Dismissal

11     As a preliminary matter, the Court should grant summary judgment *sua sponte* in favor of
12 three defendants: Ron Haynes, the State of Washington, and the DOC.

13     First, the prior Report and Recommendation (R&R) adopted in part by the Court found
14 that "[t]here are no facts indicating that Superintendent Haynes was personally involved in Mr.
15 Gallagher's medical care." The R&R found that as "the current CBCC Superintendent," Mr.
16 Haynes was "still a proper defendant in Mr. Gallagher's claim for injunctive relief 'because he
17 would be responsible for ensuring that injunctive relief was carried out, even if he was not
18 personally involved in the decision giving rise to [the plaintiff's] claims.'" Dkt. 64, p. 35 (quoting
19 *Pouncil v. Tilton*, 704 F.3d 568, 576 (9th Cir. 2012)); Dkt. 70 (adopting R&R in part).

20     Defendants state in their brief that Mr. Haynes is no longer superintendent at CBCC. Mr.
21 Gallagher does not dispute this. Although defendants do not submit evidence of Mr. Haynes's
22 move from that position, the Court can take judicial notice of this fact as a matter of public
23 record and one "'capable of accurate and ready determination by resort to sources whose
24 accuracy cannot reasonably be questioned.'" *See Jespersen v. Harrah's Operating Co., Inc.*, 444

25

F.3d 1104, 1110 (9th Cir. 2006) (en banc) (quoting Fed. R. Evid. 201); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *see also* Clallam Bay Corrections Center, Washington State Department of Corrections, https://www.doc.wa.gov/corrections/incarceration/ prisons/cbcc.htm (government website listing current CBCC superintendent as Jeri Boe) (last visited December 10, 2018); Stafford Creek Corrections Center, Washington State Department of Corrections, https://www.doc.wa.gov/corrections/incarceration/prisons/sccc.htm (government website listing Ron Haynes as superintendent of Stafford Creek Corrections Center as of October 2017) (last visited December 10, 2018). In addition, Mr. Gallagher's request for injunctive relief is moot because he received the surgery he requested in May 2018. Feulner Decl., Dkt. 119-6, p. 26; Second Amended Complaint, Dkt. 13, p. 23. Because the sole basis for Mr. Haynes's liability is no longer present, then, the Court should dismiss Mr. Haynes as a defendant.

Second, defendants again raise the argument that DOC and the state of Washington are not proper defendants because they are not "persons" subject to suit for damages under § 1983. Dkt. 118; *see* Dkt. 44, p. 8 (defendants' prior motion for summary judgment). The Court previously found that the state defendants waived their Eleventh Amendment sovereign immunity by removing the case to federal court, but the Court did not rule on whether they are "persons" under § 1983. *See* Dkt. 64, 70. The Court should decide here that DOC and the State are not proper defendants because they are not "persons" under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997).

Ordinarily, defendants would be required to raise a request to dismiss defendants in their own summary judgment motion and not in their response to plaintiff's motion. But where, as here, no set of facts would permit the plaintiff to recover damages in a § 1983 suit against the

REPORT AND RECOMMENDATION - 17

DOC and the State, and plaintiff has fully briefed the issue before, summary judgment is

appropriate *sua sponte*. *See Kassbaum v. Steppenwolf Productions, Inc.*, 236 F.3d 487, 494-95

(9th Cir. 2000) (acknowledging that district court can grant summary judgment *sua sponte* in

non-moving part's favor under certain circumstances).

B.      Qualified Immunity

        Qualified immunity is an affirmative defense to damages liability and does not bar

actions for declaratory or injunctive relief. *American Fire, Theft & Collision Managers, Inc. v.*

*Gillespie*, 932 F.2d 816, 818 (9th Cir. 1991). To defeat the defendants' qualified immunity

claims, Mr. Gallagher must show that the defendants violated a statutory or constitutional right

and that the "'right was clearly established at the time of the alleged misconduct.'" *Hamby*, 821

F.3d at 1090 (quoting *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015)). The Court may address

these elements in either order. *Id.* at 1090 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Court must decide the qualified immunity issue at the summary judgment stage when it

turns on issues of law. *Torres v. City of Los Angeles*, 548 F.3d 1197 (9th Cir. 2008).

        In considering the first prong, the Court must ask whether the facts show that the

defendants' conduct violated a constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 201

(2001).

        Under the second prong, the Court asks whether the particular right defendants violated

was "clearly established," meaning the right was "'sufficiently clear that *every* reasonable

official would have understood that *what he is doing* violates that right.'" *Hamby*, 821 F.3d at

1090-91 (quoting *Taylor*, 135 S.Ct. at 2044). "That is, existing precedent must have 'placed

beyond debate the unconstitutionality of' the officials' actions, as those actions unfolded in the

specific context of the case at hand." *Id.* at 1091 (quoting *Taylor*, 135 S.Ct. at 2044). The inquiry

under the second prong thus depends on the facts of the case. *See Mullenix v. Luna*, 136 S. Ct.

305, 308 (2015) ("This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" [quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)]); *White v. Pauly*, ––– U.S. ––––, 137 S.Ct. 548, 552 (2017) ("[T]he clearly established law must be 'particularized' to the facts of the case."). In short, a Court's determination at the second prong depends on the factual record as it exists at the time. The burden is on the plaintiff to show that the right was clearly established. *See Sorrels v. McKee*, 290 F.3d 965, 969 (9th 2002).

In short, to resolve the qualified immunity issue at this stage, the Court must ask, "viewing the evidence most favorably to [the defendants], and given existing case law at that time, was it 'beyond debate' that the prison officials pursued a medically unreasonable course of treatment" for Mr. Gallagher's hernia? *See Hamby*, 821 F.3d at 1092.

Contrary to Mr. Gallagher's argument, this Court's prior ruling on qualified immunity does not dispose of the qualified immunity issue. In denying defendants' motion for summary judgment on the basis of qualified immunity, the Court "view[ed] the facts in the light most favorable to Mr. Gallagher." Dkt. 64, p. 27; Dkt. 70, p. 3 (adopting qualified immunity analysis from R&R, Dkt. 64). Its analysis did not imply that *plaintiff* is entitled to summary judgment on the qualified immunity issue. Because Mr. Gallagher is now the moving party, the standard for viewing the evidence has switched: the Court must now view the facts in the light most favorable to the defendants in determining qualified immunity, as it must in ruling on the merits. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007); *Schwenk v. Hartford*, 204 F.3d 1187, 1193 n.3; *see also Gravelet-Blondin v. Shelton*, No. C09-1487RSL, 2010 WL 890000, at *1 (W.D. Wash. Mar. 8, 2010) (examining *Saucier* standard in unusual case where plaintiff moves for summary judgment on qualified immunity). "[W]here the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge,

REPORT AND RECOMMENDATION - 19

1    must determine liability." *A.D. v. California Highway Patrol*, 712 F.3d 446, 459 (9th Cir. 2013)

2    (quoting *McKenna v. Edgell*, 617 F.3d 432, 438–46 (6th Cir. 2010)). As discussed below, in this

3    case the qualified immunity question depends on such disputes of fact.

4          During oral argument on plaintiff's summary judgment motion, counsel for plaintiff

5    requested the opportunity to further brief qualified immunity. The Court should decline this

6    request. The Supreme Court has instructed that qualified immunity should be addressed at the

7    earliest possible stage of litigation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Court's

8    prior ruling on qualified immunity, in ruling on the defendants' motion for summary judgment,

9    settled the issue only under the standard of review appropriate to that motion and the record to

10    that point. Dkt. 64, 70. This did not imply that plaintiff is entitled to summary judgment on that

11    issue. At the very least, defendants' response to plaintiff's motion placed plaintiff on notice that

12    defendants are continuing to raise a qualified immunity defense. Dkt. 118. Accordingly, there is

13    no good cause to allow further briefing at this stage.

14         1.    <u>Constitutional Violation</u>

15          Under the first prong of the qualified immunity analysis, Mr. Gallagher must show that

16    the defendants' conduct violated a constitutional right and no genuine dispute of material fact

17    remains. The Court should conclude that, viewing the facts in the light most favorable to

18    defendants, there are still genuine disputes of material fact as to whether any of the defendants

19    had the required state of mind of deliberate indifference.

20          To be entitled to relief under 42 U.S.C. § 1983, a plaintiff must show: (i) the conduct

21    complained of was committed by a person acting under color of state law; and (ii) the conduct

22    deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the

23    United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels*

24

25    REPORT AND RECOMMENDATION - 20

*v. Williams*, 474 U.S. 327 (1986). Mr. Gallagher bases his § 1983 claim on an alleged violation of the Eighth Amendment.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (*quoting Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The two-prong test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096 (*quoting McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." *Jett*, 439 F.3d at 1096 (*citing McGuckin*, 974 F.2d at 1060). The defendants must have known of and disregarded an excessive risk to the plaintiff's health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A difference of opinion about treatment between plaintiff and prison medical authorities "does not give rise to a § 1983 claim," but it does not preclude one, either. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981); *Hamby v. Hammond*, 821 F.3d 1085, 1097 (9th Cir. 2016) (Gould, Judge, concurring in part and dissenting in part).

The medical need must be serious in the constitutional sense, and the indifference to medical needs must be substantial. Indications of a serious medical need that falls within the Eighth Amendment protection include: if a plaintiff shows the existence of an injury that a reasonable doctor or patient would find to be important and worthy of comment or treatment; a medical condition that would significantly affect an individual's daily activities; and a condition that creates chronic and substantial pain. *Colwell v. Bannister,* 763 F.3d 1060, 1066-67 (9th Cir.

2014). Allegations that amount to mere indifference, negligence, or medical malpractice will not support an Eighth Amendment cause of action under § 1983. *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (*citing Estelle*, 429 U.S. at 105–06). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also McGuckin*, 974 F.2d at 1050. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Here, the Court can assume that Mr. Gallagher has established that his umbilical hernia constituted a serious medical need at some time between July 2014, when he reported his hernia was growing and causing daily pain, and February 2017, when he was denied surgery for his umbilical hernia while his inguinal hernia was being operated on. *See* Feulner Decl., Dkt. 119-5, p. 1; Gallagher Decl., Dkt. 41, ¶¶ 48-49 & Exhibits 44, 45. Mr. Gallagher has submitted evidence in the form of his own declaration and those of other inmates and Clallam Bay corrections officers indicating that he was in pain daily, that he had to hold his hernia in when he walked and moved his bowels, and that his hernia prevented him from performing certain activities. *See, e.g.*, Gallagher Decl., Dkt. 41, ¶¶ 12, 15, 39 & Exhibits 23, 38, 50; Froehling Decl., Dkt. 97-7, p. 2 & Dkt. 97-8, pp. 2-3 & Dkt. 97-9, pp. 2-3. He has also shown that at least one treating doctor found his hernia "important and worthy of comment or treatment" as early as 2010. Gallagher Decl., Dkt. 41, Exhibit 4; *see Colwell*, 763 F.3d at 1066-67.

The Court should find, nonetheless, that defendants have presented sufficient evidence to create a genuine dispute of material fact as to whether any of the defendants were deliberately indifferent to Mr. Gallagher's hernia. In other words, Mr. Gallagher has not shown that any

REPORT AND RECOMMENDATION - 22

1    reasonable jury would necessarily find that Dr. Fetroe, Nurse Kroha, or Dr. Hammond was

2    deliberately indifferent to Mr. Gallagher's serious medical need.

3              a.        <u>Dr. Fetroe and Nurse Kroha</u>

4            As defendants point out, Mr. Gallagher's opening brief did not identify how the

5    remaining defendants—Dr. Fetroe, Nurse Kroha, and Dr. Hammond—individually violated his

6    Eighth Amendment rights. *See* Dkt. 118, p. 1. (Plaintiff was perhaps relying on the Court's prior

7    decision not to grant summary judgment in favor of the DOC and State of Washington. Dkt. 64.

8    This would not excuse his failure to explain why he is entitled to summary judgment against the

9    individual defendants, however.) Nor does Mr. Gallagher address these defendants' individual

10    liability in his reply brief. The evidence at this stage shows issues of fact as to whether Dr. Fetroe

11    and Nurse Kroha were deliberately indifferent to Mr. Gallagher's need.

12            To prevail on a 42 U.S.C. § 1983 claim, a plaintiff must show that a defendant caused or

13    personally participated in causing the harm alleged in the complaint. *See Leer v. Murphy*, 844

14    F.2d 628, 633 (9th Cir. 1988); *Arnold*, 637 F.2d at 1355. A person subjects another to a

15    deprivation of a constitutional right when committing an affirmative act, participating in

16    another's affirmative act, or failing to perform an act which is legally required. *Johnson v. Duffy*,

17    588 F.2d 740, 743 (9th Cir. 1978). Sweeping conclusory allegations against an official are

18    insufficient to state a claim for relief. *Leer*, 844 F.2d at 633.

19            Dr. Fetroe examined Mr. Gallagher once, in June 2015, along with Nurse Kroha and

20    another provider. Fetroe Decl., Dkt. 45, ¶ 11; Gallagher Decl., Dkt. 41, Exhibit 17. Mr. Gallagher

21    stated he was "in pain daily" and that his hernias would "pop back out" when he stood up. Dkt.

22    41, ¶ 20. The providers found that Gallagher's umbilical hernia "was easily reducible" and had

23    not significantly changed in size since his October 2014 visit. Fetroe Decl., Dkt. 45, ¶ 11. They

24    determined that "Mr. Gallagher did not yet meet the criteria per DOC policy for consultation and

25    REPORT AND RECOMMENDATION - 23

1    repair of his hernia" and advised him "to return if he experienced increased pain, vomiting, or

2    inability to reduce his hernia." *Id.* Mr. Gallagher submitted over 20 kites to Dr. Fetroe and Nurse

3    Kroha over the next three months; they responded either that it was a "sick call issue" or he

4    could pay for medical care himself. Gallagher Decl., Dkt. 41, p. 10.

5        Dr. Fetroe also investigated a December 2015 grievance by Mr. Gallagher regarding lack

6    of care for his two hernias. Dkt. 41, ¶¶ 33, 34 & Exhibit 33. Dr. Fetroe found that the treatment

7    the CRC had previously denied for Mr. Gallagher's condition was not medically necessary and

8    that if a change in his condition occurred, Mr. Gallagher would need to contact his provider. *Id.*

9        Mr. Gallagher has not shown that there is no genuine dispute of material fact that Dr.

10    Fetroe was deliberately indifferent to his medical needs. As defendants point out, Mr.

11    Gallagher's argument on this point relies entirely on the DOC's decision, during a February 2017

12    emergency surgery on his inguinal hernia, not to authorize the surgeon to fix his umbilical

13    hernia. Dkt. 95, pp. 25-27. There is no evidence that Dr. Fetro was involved in that decision.

14        In addition, issues of fact remain as to the level of care Mr. Gallagher was receiving

15    while Dr. Fetroe was his provider. In particular, defendants have presented enough evidence to

16    show issues of fact as to whether watchful waiting was a medically acceptable course of

17    treatment given the factors that Dr. Fetroe was faced with in treating Mr. Gallagher, *See* Feulner

18    Decl., Dkt. 119-11, p. 6; Fetroe Decl., Dkt. 45, ¶ 6. Those factors include that Mr. Gallagher's

19    umbilical hernia was reducible, that although Mr. Gallagher could not exercise vigorously or

20    perform a physical job, the pain did not hinder his activities of daily living as DOC defines them,

21    and that the pain was not "intractable" (severe and constant) because Mr. Gallagher was able to

22    continue to maintain a certain level of activity. *See, e.g.*, Feulner Decl., Dkt. 121-3, pp. 9-11.

23    Accordingly, summary judgment against Dr. Fetroe is not warranted.

24

25    REPORT AND RECOMMENDATION - 24

1    Likewise, the evidence shows genuine disputes of material fact as to whether Nurse

2  Kroha was deliberately indifferent to Mr. Gallagher's needs. Nurse Kroha was Mr. Gallagher's

3  primary care provider from October 2013 to July 2015. Kroha Decl., Dkt. 46, ¶¶ 4-9. Mr.

4  Gallagher made six visits in that period. Nurse Kroha found that Mr. Gallagher's hernia was

5  reducible each time. *See id.* She determined that surgical repair was not medically necessary. She

6  presented the case to the CRC, in November 2014, and the CRC reached the same decision. *Id.*, ¶

7  7; Declaration of Counsel (Feulner Decl.), Dkt. 121-1, p. 7. Nurse Kroha states that she

8  repeatedly encouraged Mr. Gallagher to sign up for sick call. After July 2015, Nurse Kroha

9  responded to some of Mr. Gallagher's kites, but she was no longer his provider.

10    Like Dr. Fetroe, Nurse Kroha does not appear to have been involved in the decision to

11  deny surgery on Mr. Gallagher's hernia in February 2017. Because this is the basis of Mr.

12  Gallagher's argument that defendants were deliberately indifferent, and because, as noted above,

13  issues of fact remain as to whether "watchful waiting" was a medically acceptable option under

14  the circumstances, summary judgment is not appropriate against Nurse Kroha, either.

15    b.    Dr. Hammond

16    Mr. Gallagher did brief the supervisory liability of Dr. Hammond. However, Dr.

17  Hammond has presented sufficient evidence to create a genuine dispute of material fact as to

18  whether his involvement in Mr. Gallagher's treatment subjects him to liability for any violation

19  of Mr. Gallagher's constitutional rights.

20    Supervisory officials "may not be held liable for the unconstitutional conduct of their

21  subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

22  Supervisory liability can be imposed only if (1) the supervisor was personally involved in the

23  constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's

24  wrongful conduct and the constitutional violation. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.

25

1    1989). "The requisite causal connection can be established . . . by setting in motion a series of

2    acts by others, or by knowingly refus[ing] to terminate a series of acts by others, which [the

3    supervisor] knew or reasonably should have known would cause others to inflict a constitutional

4    injury." *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011) (internal citations omitted).

5        In the medical context, a conclusion that a defendant acted with deliberate indifference

6    requires that the plaintiff show "a purposeful act or failure to respond to a prisoner's pain or

7    possible medical need and . . . harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091,

8    1096 (9th Cir. 2006). Deliberate indifference can be "manifested by prison doctors in their

9    response to the prisoner's needs." *Estelle*, 429 U.S. at 104-05 (footnotes omitted).

10        Where a defendant's alleged knowledge of a substantial risk to a prisoner's health comes

11    from grievances submitted by the prisoner though the administrative grievance process, whether

12    administrative or supervisory defendants involved in that process are liable for constitutional

13    violations depends on (1) the type and timing of the problem the grievances addressed and (2)

14    the defendant's role in the process. For example, a grievance coordinator or reviewer cannot

15    cause or contribute to a completed constitutional violation that occurred in the past and that is not

16    remediable by any action the reviewer might take. *See, e.g.*, *Shehee v. Luttrell*, 199 F.3d 295, 300

17    (6th Cir. 1999) (defendants whose "only roles in [a civil rights] action involve the denial of

18    administrative grievances . . . cannot be liable under § 1983").

19        If, however, the alleged constitutional violation is ongoing, and the defendant reviewing

20    the inmate grievance has the duty and authority to review the propriety of the medical treatment

21    and take action to remedy the alleged deficiencies—not by providing medical care themselves,

22    but by obtaining the answer to whether the medical care was proper from a person with medical

23    training and directing a remedy to be implemented—then the defendant may be liable because he

24

25    REPORT AND RECOMMENDATION - 26

1   or she knew of an "ongoing constitutional violation and . . . had the authority and opportunity to

2   prevent the ongoing violation." *Herrera v. Hall*, 2010 WL 2791586, at *4 (E.D. Cal. July 14,

3   2010) (unpublished) (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)).

4        Where claims are asserted against administrators or persons who supervise the provision

5   of prison medical care, the question is not whether the administrator or supervisor was "directly

6   involved" in the plaintiff's diagnosis, but whether the plaintiff has sufficiently alleged that the

7   supervisor's knowing failure to address the treating provider's deficient care interfered with

8   plaintiff's medical treatment. *See Gonzalez v. Ahmed*, 67 F. Supp. 3d 1145, 1156-57 (N.D. Cal.

9   2014) (where supervisors knew doctor had denied plaintiff medical care but nonetheless ordered

10   plaintiff to return to that doctor's care).

11        Here, Dr. Hammond was personally involved only in responding to Mr. Gallagher's

12   January 2016 grievance and voting as part of the CRC that denied his request for surgery in

13   November 2014. Hammond Decl., Dkt. 120, ¶ 6; Feulner Decl., Dkt. 121-1, p. 7. The grievance

14   response stated that Mr. Gallagher should notify his primary care provider if there was a

15   significant change in his condition. Hammond Decl., Dkt. 120, Exhibit 2. From this evidence of

16   participation, there remain issues of fact as to whether Dr. Hammond was personally deliberately

17   indifferent to Mr. Gallagher's right to adequate medical care. And as with Dr. Fetroe and Nurse

18   Kroha, there is no evidence that Dr. Hammond was directly involved in the decision to deny

19   surgery in February 2017.

20        With respect to supervisory liability, the Court previously found:

21        If a jury determines that strict adherence to the OHP's directives in Mr.
             Gallagher's case was a violation of the Eighth Amendment, Dr. Hammond could

22        be held liable as he was in a position to review the propriety of Mr. Gallagher's
             medical treatment and to take action to remedy the alleged deficiencies.

23        Accordingly, defendants' motion to dismiss Dr. Hammond from this case should
             be denied.

24

25

Dkt. 64, p. 35; *see* Dkt. 70 (adopting R&R in part).

Defendants have shown adequate evidence to prevent the Court from removing this determination from the jury's hands. Mr. Gallagher contends that Dr. Hammond is liable as a supervisor because he ratified the CRC's refusal of Mr. Gallagher's requests for an umbilical hernia repair, and because he did not interfere when Mr. Gallagher grieved the February 2017 denial of surgery. *See* Gallagher Decl., Dkt. 41, Exhibit 34; Dkt. 122, pp. 9-11. Viewing the facts in a light most favorable to defendants, a reasonable jury could conclude that Mr. Gallagher's care from his medical providers was not deficient, that Dr. Hammond did not knowingly fail to address such deficient care, or both. *See Gonzalez*, 67 F. Supp. 3d at 1156-57. Thus, defendants have shown that issues of fact remain as to whether Dr. Hammond's involvement in Mr. Gallagher's treatment amounted to deliberate indifference.

2.    Violation of Clearly Established Right

Mr. Gallagher's summary judgment motion does not succeed under the second prong of the qualified immunity analysis, either. Viewing the facts in the light most favorable to the defendants, the unconstitutionality of the defendants' actions and omissions was not "beyond debate."

This is in contrast to, but consistent with, the Court's previous denial of summary judgment as to qualified immunity in *defendants'* favor when viewing the facts in the light most favorable to Mr. Gallagher. The prior Report and Recommendation adopted by the Court found that, viewing the facts in a light most favorable to Mr. Gallagher, the unconstitutionality of the defendants' actions and omissions *was* "beyond debate":

> Any reasonable officer would have understood that to deny any treatment other than ineffective pain medicine to a prisoner who (taking the facts in the light most

REPORT AND RECOMMENDATION - 28

favorable to the non-moving party concerning qualified immunity) had a rapidly growing hernia, was in near-constant pain that inhibited his ability to work and prevented him from exercising, developed hypertension that was likely connected to the medical situation concerning his hernia and inability to exercise, and had to press two hernias in when he sat, stood, walked, worked, or moved his bowels, would violate the prisoner's Eighth Amendment right to adequate medical care. *See Hamby*, 821 F.3d at 1090; *Woodroffe v. Oregon Dep't of Corr.*, No. CV 05-977-MO, 2008 WL 2234583, at *7 (D.Or. May 27, 2008) (rejecting qualified immunity where defendants were aware of hernia, knew plaintiff was suffering discomfort, pain, and anxiety and that hernia was quite symptomatic, knew plaintiff had problems reducing it, and knew an operation would alleviate symptoms, but denied surgery for over three years).

Dkt. 64, p. 27; Dkt. 70 (adopting R&R in part and holding, "it was clearly established that observing a hernia's growth, without more, violates one's right to be free from cruel and unusual punishment").

As noted above, the Court views the facts in the opposite light when the plaintiff is the moving party. Viewed in the light most favorable to defendants, Mr. Gallagher had a growing but reducible hernia, had access to sick calls that would help address his pain, was inhibited in strenuous activities but could still perform activities of daily living, and had hypertension that predated his hernia. *See, e.g.*, Feulner Decl., Dkt. 121-3, p. 11 (active in programming, though could not run or lift weights, June 2015) & Dkt. 121-4, pp. 15, 28 (yoga, walking, feeling good in June 2017; hypertension began in 2007). In these circumstances, the Court's prior analogizing of Mr. Gallagher's case to *Woodroffe v. Oregon Dep't of Corr.*, No. CV 05-977-MO, 2008 WL 2234583, at *7 (D.Or. May 27, 2008), and distinguishing of it from *Hamby v. Hammond*, 821 F.3d 1085, 1097 (9th Cir. 2016), would no longer apply. *See* Dkt. 64, p. 27. In short, under this view of the facts, defendants' treatment of Mr. Gallagher was not, "beyond debate," deliberately indifferent to his serious medical need.

Accordingly, the Court should refrain at this stage from deciding that defendants are not entitled to qualified immunity. *See Estate of Lopez by & through Lopez v. Gelhaus*, 871 F.3d

REPORT AND RECOMMENDATION - 29

998, 1021 (9th Cir. 2017), *cert. denied sub nom. Gelhaus v. Estate of Lopez ex rel. Lopez*, 138 S. Ct. 2680 (2018) (holding that where issues of fact remain that would affect qualified immunity analysis, qualified immunity must be decided after finding of facts at trial). And because genuine disputes of material fact remain that affect whether defendants are entitled to qualified immunity, the Court should not decide whether Mr. Gallagher is entitled to summary judgment on his Eighth Amendment claims.

## CONCLUSION

For the reasons stated above, the undersigned recommends that Mr. Gallagher's motion for partial summary judgment (Dkt. 95) be **denied**.

Mr. Gallagher's motion to exclude expert witnesses (Dkt. 84) is **granted in part** and **denied in part**.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **December 28, 2018,** as noted in the caption.

Dated this 12th day of December, 2018.


Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 30